IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| JOHN CHRISTOPHER WILLIAMS, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 4:06CV00020 |
| NORMAN W. REYNOLDS, JEANNE REYNOLDS, DAVID REYNOLDS and GREGORY REYNOLDS, | ) | **MEMORANDUM OPINION** |
| Defendants. | ) | By: Jackson L. Kiser |
| | ) | Senior United States District Judge |

Before me now is Defendants Gregory and David Reynolds' ("Defendants") Fed. R. Civ. P. 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction ("Motion to Dismiss") against John Christopher Williams ("Plaintiff"). Also before this Court is Plaintiff's Motion for Leave to Amend the Complaint ("Motion to Amend"). Oral arguments have been heard and the case is ripe for decision. For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED.** Plaintiff's Motion to Amend is **DENIED**.

**I. FACTUAL BACKGROUND**

In 1985, Plaintiff Dr. Williams and Defendant Norman Reynolds[1] co-owned portions of two Virginia based S corporations, NAL and PUL. Defendant Norman was the CEO of both companies, with control over the accountant, books, and daily operations. Jeanne was the business manager of NAL, integral in the day-to-day running of the company. Plaintiff Williams alleges that sometime in 2000, Norman began taking distributions from NAL and PUL without

---

[1]The four defendants in this case are members of the same nuclear family and share the same last name. In order to avoid undue confusion, I will forgo the traditional practice of referring to the parties by last name and use their first names instead.

disclosing them or making similar distributions to Plaintiff.  Plaintiff also alleges that Defendant Norman took approximately $190,000 in distributions without reporting it to the IRS while Plaintiff paid approximately $192,345 in taxes during the same time.  Plaintiff claims that lack of distributions and material information from Defendant Norman led Plaintiff to sell his interests in both companies to Defendant Norman for $1 million in 2001.  Defendant Norman then transferred some of the shares to his wife, Defendant Jeanne, and sons, Defendants David and Gregory.  In 2004, Defendant Norman sold the companies to a venture capital group for $10 million.  Had Plaintiff retained his shares he would have earned $5 million.  Learning of the fraud in 2004, Plaintiff filed suit in April of 2006.

Defendant Gregory Reynolds received shares in PUL from his father, Defendant Norman Reynolds, on December 31, 2001, approximately one year after Plaintiff sold his shares in this company.  Defendant Gregory sold his shares in October of 2004.  Defendant Gregory has resided in Massachusetts since 1991 and visits Virginia once a year.  He worked at NAL for one summer in 1994 performing general office maintenance and landscaping tasks.

Defendant David similarly acquired and disposed of shares in PUL at the same time as his brother, Defendant Gregory.  Defendant David had been employed at PUL doing odd jobs over summers and school breaks between 1992 and 1997.  He worked at NAL for approximately 100 hours in 2000.  Additionally, Defendant David was a part time consultant in human resources for PUL in the summer of 2001.  Furthermore, Defendant David assisted with the sale of PUL from June 2002 to October 2004 as a consultant, during which he performed 300 hours of work mostly from Massachusetts, although some of it from Virginia.  Defendant David has resided in Massachusetts since 1996 and visits Virginia about once a year.

2

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint against Defendants on April 10, 2006 and Defendants filed an Answer on May 17, 2006. Defendant Gregory filed his Motion to Dismiss for lack of Jurisdiction on July 28, 2006 and Defendant David filed his on August 24. Plaintiff filed a Petition for Leave to Amend Complaint on September 18, 2006, apparently to correct any deficiencies in the original Complaint as to Defendants Gregory and David. Defendants filed a reply to the Plaintiff's Motion to Amend Complaint on September 22, 2006.

## III. THE LEGAL STANDARD

### A. *Motion to Dismiss for Lack of Personal Jurisdiction*

When a defendant files a motion to dismiss the plaintiff's complaint for lack of jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff must prove jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo*, 2 F.3d 56, 59-60 (4th Cir. 1993). If material facts are in dispute, a court may either hold a pretrial evidentiary hearing or postpone resolution of the motion until trial. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Klockner-Pentaplast of America v. Roth*, 860 F.Supp. 1119, 1121 (W.D. Va. 1994). When a court declines to hold an evidentiary hearing and decides to rely on the parties' pleadings, affidavits, and other legal documents, the plaintiff faces a lesser standard such that the plaintiff only must "make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs*, 886 F.2d at 676. "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*.

3

B. *Motion for Leave to Amend Complaint*

Under Federal Rule of Civil Procedure 15(a), any party seeking to amend its pleading after responsive pleadings have been filed may do so "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed R. Civ. P. 15(a). Generally, courts should grant leave to amend although it is within their discretion to deny the amendment for good reason, such as prejudice to the opposing party, bad faith, or futility of the amendment. *Forman v. Davis*, 371 U.S. 178, 182 (1962). Where the party's proposed amendment would not cure any defect in the original complaint, the amendment is futile and may be denied. *HCMF Corp v. Allen*, 238 F.3d 273, 277 (4th Cir. 2001).

## IV. DISCUSSION

### A. MOTION TO DISMISS

In this case, the Plaintiff has not made the requisite prima facie showing that this Court has either general or specific personal jurisdiction over Defendants David and Gregory Reynolds. *Combs*, 886 F.2d at 676. In the Plaintiff's Complaint, the only causes of action against defendants David and Gregory Reynolds are for accounting and constructive trust. In a proposed amendment to the Complaint, the Plaintiff alleges that Defendant Gregory Reynolds "was previously employed by both companies." ¶14. Plaintiff further alleges, "under information and belief" that both Defendants "personally participated in and/or had the right and ability to supervise, direct, control, or otherwise cure the wrongful conduct alleged in this complaint, and/or . . . derived direct financial benefit from the wrongful conduct alleged in this complaint." ¶¶ 12, 18. Even construing these allegations in the light most favorable to the Plaintiff, there is not a sufficient connection between either Defendant's contacts with Virginia

4

and the claims for accounting and constructive trust justify personal jurisdiction.

To begin, Virginia's long arm statute has been construed to be limited only by due process, and thus the central inquiry here is whether either Defendant's contacts with the Commonwealth of Virginia confer personal jurisdiction within the limits of due process. Va. Code § 8.01-328.1(A)(1); *Bassett Furniture Industries, Inc. v. Sexton*, 596 F. Supp. 454, 456 (W.D. Va. 1984). Due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310, 315-16 (1945). A non-resident defendant should be able to anticipate being haled into court as a result of contacts directed at the forum state, such as by purposely availing oneself with of the activities within the forum state that provide clear notice that one is subject to suit there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The plaintiff must show that either general or specific jurisdiction exists. General jurisdiction arises from a defendant's continuous and systematic contacts with the forum state such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Reynolds & Reynolds Holdings, Inc. v. Data Supplies, Inc*., 301 F. Supp. 2d 545, 549 (E.D. Va. 2004). The threshold for establishing the sort of continuous and systematic contacts necessary for general jurisdiction is high. *ESAB Group v. Centricut, Inc*., 126 F.3d 617, 623 (4th Cir. 1997). "The Fourth Circuit disfavors a broad interpretation of general jurisdiction and instead restricts the exercise of such jurisdiction to those instances in which there is continuous, substantial activity of a nature such as to justify suit." *Southard v. D'Amelio*, 2004 U.S. Dist. LEXIS 27892 (D.N.C. 2004). Applying general personal jurisdiction to a non-residents typically occurs where the non-residents "are essentially domiciled within the forum state." *Corry v. CFM Majestic, Inc*., 16 F.

Supp. 2d 660, 663 (E.D. Va. 1998). The Supreme Court has questioned whether such general jurisdiction can ever apply to individuals, as opposed to corporate defendants. *Burnham v. Superior Court*, 495 U.S. 604, 610 n.1 (1990) ("It may be that whatever special rule exists permitting 'continuous and systematic' contacts ... to support jurisdiction with respect to matters unrelated to activity in the forum applies only to corporations.")

Specific jurisdiction arises where continuous and systematic contacts are absent, but sufficient contacts relating to the cause of action create a substantial connection with the forum state. *Reynolds & Reynolds Holdings*, 301 F. Supp. 2d at 549. "In determining whether specific jurisdiction exists, the court considers (1) the extent to which the defendant has purposefully availed himself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

Turning to general jurisdiction first, it appears that Defendant Gregory Reynolds contacts are not systematic or continuous enough to justify general personal jurisdiction. According to his affidavit, he is a citizen of Massachusetts who has not lived in Virginia since 1991. He visits family in Virginia only once a year; owns no property in Virginia; and only owned shares in the Virginia corporation at issue from December 2002 until October, 2004. He has not purposely availed himself of conducting activities in Virginia. These infrequent contacts with the Commonwealth of Virginia are not substantial enough to create general personal jurisdiction. In *Smith v. Dawson-Smith*, 111 Fed. Appx. 360, 363 (6th Cir. 2004) the court hled that a defendant who similarly had conducted no business in Tennessee, and had not directed any activities there,

6

and had made only infrequent visits to the state did not "have a substantial enough connection with the forum state to make the exercise of jurisdiction over her reasonable." *See also Shong Ching Lau v. Change*, 415 F. Supp. 627, 631 (E.D. Pa. 1976) (defendant's infrequent trips to Pennsylvania fail to establish general personal jurisdiction).

As for specific personal jurisdiction, the Plaintiff also fails to meet the burden of showing sufficient contacts relating to the causes of action for accounting and constructive trust. The Plaintiff's allegation in the proposed amendment to the original Complaint is that Defendant Gregory Reynolds "personally participated in and/or had the right and ability to supervise, direct, control, or otherwise cure the wrongful conduct." ¶ 12. This allegation is contradicted by other information in the Complaint. Both Defendant Gregory Reynolds and Plaintiff agree that the Defendant first owned the shares in December of 2002, after any of the alleged torts had already occurred. Furthermore, Defendant Gregory Reynolds affidavit states that he "performed general office maintenance, including painting and yard work" for NAL for one summer before attending college in 1994. This work occurred before any alleged tortious conduct. Plaintiff cannot base specific personal jurisdiction on Defendant Gregory Reynolds' ownership of shares alone as mere stock ownership is insufficient to justify haling the shareholder into court in the forum state of the corporations' formation. *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977).

While Defendant David Reynolds has had more contact with Virginia than his brother, these contacts are not continuous and systematic enough to establish general personal jurisdiction. First, he has resided permanently in Massachusetts since 1997, but lived in Virginia prior to that. He also makes infrequent trips to Virginia to see his family, approximately once a year. He maintained some more contact with Virginia by working with NAL for approximately

7

100 hours in 2000. He performed human resources consulting to PUL in the summer of 2001. From 2001 to 2004 he performed about 300 hours of consulting work preparing PUL for sale. Most of this work was performed from Massachusetts, but some of it from Virginia as well. At this same time, he was a full time graduate student in Massachusetts. While the consulting work with PUL does show that Defendant David Reynolds did purposefully avail himself of business opportunities in Virginia, there is no showing that this availment–consisting of about ten hours of work per month–was continuous and systematic, or more than "random, fortuitous, or attenuated[.]" *ESAB Group, Inc. v. Centricut, Inc*., 126 F.3d 617, 625 (4th Cir. 1997).

Defendant David Reynolds' consulting work in preparing to offer PUL for sale, in combination with the Plaintiff's allegation that the Defendant "personally participated in and/or had the right and ability to supervise, direct, control, or otherwise cure the wrongful conduct alleged in this complaint, and/or . . . derived direct financial benefit from the wrongful conduct alleged in this complaint" does not amount to specific personal jurisdiction either. The Plaintiff alleged a cause of action for accounting which requires a fiduciary or similar relationship between the parties. *McClung v. Smith*, 870 F. Supp. 1384, 1400 (E.D. Va. 1994) ("Under Virginia law, an accounting is a form of equitable relief which is available upon order of a court in equity providing for an accounting of funds *among those with a partnership or other fiduciary relation inter se."*) (emphasis added). None of the contacts listed in the pleadings and affidavits allege such a relationship. Thus, there can be no specific personal jurisdiction for accounting on these facts.

For specific personal jurisdiction to attach to Defendant David's ownership of the stock, the Plaintiff's cause of action for constructive trust would have to arise out of this contact. *ALS*

*Scan, Inc.*, 293 F.3d at 712 ("In determining whether specific jurisdiction exists, the court considers (1) the extent to which the defendant has purposefully availed himself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state[.]") The equitable remedy of constructive trust is available where one holds title to property and has an equitable duty to convey that property to another. *Leonard v. Counts*, 221 Va. 582, 590 (Va. 1980) (*quoting* A. Scott, *The Law of Trusts*, § 462 at 3413 (3d ed. 1967) ("A constructive trust arises not only when there has been actual fraud, but whenever one holding title to property 'is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.'") While Defendant David Reynolds admits that he once held title to the property for which the Plaintiff seeks a constructive trust, he relinquished that title before this lawsuit was filed. Plaintiff has not alleged that Defendant David Reynolds still holds title to the stock. Therefore, specific personal jurisdiction for constructive trust cannot be found because the Plaintiff's claim for constructive trust cannot be rooted in the Defendant's former ownership of the property.

Finally, the Plaintiff's allegations in the proposed amended complaint cannot support *in rem* jurisdiction. While it is alleged that the Defendants owned at least thirty-four shares in the corporations at issue, the Plaintiff has not alleged where the *res* is, whether it is within this Court's jurisdiction, or if it can be brought here. Plaintiff has alleged that the Defendants have sold the shares in 2004, thus this Court cannot seize it. *Iron City Sav. Bank v. Isaacsen*, 158 Va. 609, 627, 164 S.E. 520, 525-26 (1932) (when court has not acquired personal jurisdiction the suit essentially becomes a proceeding *in rem*; *in rem* jurisdiction fails if the court cannot acquire control of the *res* by actual or constructive seizure, or the *res* is not located within the territorial

9

limits of the court); *Fairfax v. City of Alexandria*, 69 Va. 16, 25 (1877) (in order for court to have jurisdiction over an *in rem* proceeding, the *res* must have been brought by seizure within the power and control of the court).

### B. MOTION TO AMEND

While leave to amend a party's pleading pursuant to Rule 15(a) is generally "freely given" the court has discretion to deny this leave where the amendment would be futile. *HCMF Corp.*, 238 F.3d at 277. The Plaintiff's stated reason for amending the Complaint was in response to Defendants Gregory and David Reynolds' Motions to Dismiss for lack of jurisdiction. "Without conceding the merits of Defendants' motions, Plaintiff believes that the Proposed Amended Complaint sets forth additional facts that adequately respond to the concerns raised in Defendants' motions and more accurately presents to the Court the controversy between the parties." Plaintiff's Motion to Amend, p. 1. After analyzing the Defendant's Motions to dismiss above, and construing the allegations both from the original Complaint and the proposed amended Complaint in the light most favorable to the Plaintiff, I still find that Plaintiff has failed to meet the prima facie burden necessary to set forth a proper basis for jurisdiction. Accordingly, granting leave to amend the Complaint would serve no purpose.

### V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is **GRANTED**. Plaintiff's Motion to Amend is **DENIED**.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 20th day of October, 2006.

        s/Jackson L. Kiser
        Senior United States District Judge

11