IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

|  |  |
|---|---|
| JOHN CHRISTOPHER WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:06CV00020 |
| NORMAN W. REYNOLDS, JEANNE REYNOLDS, DAVID REYNOLDS and GREGORY REYNOLDS, | ) **MEMORANDUM OPINION** |
| Defendants. | ) By: Jackson L. Kiser<br>) Senior United States District Judge |

Before me now is Defendants Norman and Jeanne Reynolds' ("Defendants") Fed. R. Civ. P. 12(b)(6) Motion to Dismiss claims for Breach of Fiduciary Duty, Conversion, and Tortious Interference with Prospective Contract ("Motion to Dismiss") against John Christopher Williams ("Plaintiff"). Oral arguments have been heard and the case is ripe for decision. For the reasons stated herein, Defendants' Motion to Dismiss claims for Breach of Fiduciary Duty and Tortious Interference with Prospective Contract is **GRANTED**. Defendants' Motion to Dismiss the claim for Conversion is **DENIED** as to Norman Reynolds, but **GRANTED** as to Jeanne Reynolds.

**I. FACTUAL BACKGROUND**

In 1985, Plaintiff Dr. Williams and Defendant Norman Reynolds[1] co-owned portions of two Virginia based S corporations, North American Locating ("NAL") and ProMark Utility

---

[1] I will refer to Defendants by their first names because all four have the same last name.

Locators ("PUL"). Defendant Norman was the CEO of both companies, with control over the accountant, books, and daily operations. Jeanne was the business manager of NAL, integral in the day-to-day running of the company. Plaintiff Williams alleges that sometime in 2000, Norman began taking cash distributions from NAL and PUL without disclosing them or making similar distributions to Plaintiff. Plaintiff alleges that Defendant Norman took approximately $190,000 in distributions without reporting it to the IRS, but no distributions were paid to Plaintiff. Over the same time period, Plaintiff paid approximately $192,345 in taxes related to his ownership of shares in both NAL and PUL. Plaintiff claims that lack of distributions and material information from Defendant Norman, coupled with the tax liability, induced Plaintiff to sell his interests in both companies to Defendant Norman for $1 million in 2002. Defendant Norman then transferred some of the shares to his wife, Defendant Jeanne, and sons, Defendants David and Gregory. In 2004, Defendant Norman sold the companies to a venture capital group for $12-14 million. Had Plaintiff retained his shares, he would have earned approximately $5 million. Learning of the fraud in 2004, Plaintiff filed suit in April of 2006.

## II. PROCEDURAL HISTORY

Plaintiff filed his Complaint on April 11, 2006 with the following causes of action against the following defendants:

1. Fraud--Norman and Jeanne Reynolds
2. Breach of Fiduciary Duty--Norman Reynolds
3. Negligent Misrepresentation--Norman Reynolds
4. Conversion--Norman and Jeanne Reynolds
5. Tortious Interference with Prospective Contract--Norman and Jeanne Reynolds

6. Accounting--all Defendants

7. Constructive Trust--all Defendants

Defendants Norman and Jeanne Reynolds filed a Motion to Dismiss Counts 2, 4, and 5 on May 17, 2006. Plaintiff responded to this motion on June 23. Oral argument was heard on September 29, 2006.

### III. THE LEGAL STANDARD

*A.     Motion to Dismiss for Failure to State a Claim:*

Under the Federal Rules of Civil Procedure, a well-pleaded complaint must contain (1) "a short and plain statement" of jurisdiction; (2) "a short and plain statement" of the claim; and (3) a demand for judgment. Fed. R. Civ. Pro. 8(a). In considering a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6) a court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." *Venkatraman v. Rei Systems, Incorporated*, 417 F.3d 418, 420 (4th Cir. 2005). "The Complaint must be liberally construed in favor of the plaintiff, even if it appears that recovery is remote and unlikely." *Bryant v. Clevelands, Inc.*, 193 F.R.D. 486, 489 (E.D. Va. 2000). "While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief." *Bass v. E. I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Federal Election Commission v. Christian Action Network*, 894 F.Supp. 946, 950 (W.D. Va. 1995).

### IV. DISCUSSION

### A. *Breach of Fiduciary Duty*

Defendants offer two arguments for dismissing Plaintiff's Breach of Fiduciary Duty cause of action. First, the claim is barred by the statute of limitations. Second, Defendant Norman Reynolds argues that Plaintiff's claim is insufficient because, under Virginia law, a director, shareholder, or CEO of a corporation has no fiduciary duty to disclose any information or make distributions to the Plaintiff. I will not analyze the merits of the second argument as the claim is clearly barred by the statute of limitations.

Under Va. Code Ann. § 8.01-248 "[e]very personal action accruing on or after July 1, 1995, for which no limitation is otherwise prescribed, shall be brought within two years after the right to bring such action has accrued." A cause of action "shall be deemed to accrue and the prescribed limitation period shall begin to run *from the date the injury is sustained* in the case of injury to the person or damage to property, when the breach of contract occurs in actions *ex contractu* and *not when the resulting damage is discovered,* except ...where otherwise provided under ... § 8.01-249 ..." Va. Code Ann. § 8.01-230 (emphasis added). Plaintiff argued that the § 8.01-249 exception applied. Section 8.01-249 provides that the statute of limitations shall not run from the time of injury, but the time of discovery "[i]n actions for fraud or mistake, in actions for violations of the Consumer Protection Act . . . based upon any misrepresentation, deception, or fraud, and in actions for rescission of contract for undue influence..." Va. Code Ann. § 8.01-249(1). Alternatively, the Plaintiff has argued that Va. Code Ann. § 8.01-243(b) (five year statute of limitations for actions based on injury to property) or § 8.01-246(2) (five year statute of limitations to bring actions based in contract) should apply.

Other litigants have also tried to avoid the time bar in the same manner that the Plaintiff

4

here seeks to, and they have failed. Virginia Courts have held that § 8.01-248 applies to breach of fiduciary duty claims, but not to property or contract actions. *See Singer v. Dungan*, 45 F.3d 823, 827 (4th Cir. 1995) (applying earlier version of § 8.01-248 with one year time limit); *RTC v. Everhart*, 37 F.3d 151 (4th Cir. 1994) (also applying earlier version of law); *FDIC v. Cocke*, 7 F.3d 396 (4th Cir. 1993) (also applying earlier version of law); *Pathek v. Trivedi*, 61 Va. Cir. 572, 576-77 (Va. Cir. Ct. 2003). This is the case even when the fraud and fiduciary duty claims are entwined. *Langdon v. Doherty*, 2005 Va. Cir. LEXIS 305, *24 n. 11 (Va. Cir. Ct. 2005) ("breach is so intricately intertwined with his transgressions under Count I [Fraud] and the damages so coextensive that the Court need not separately address this Count other than to note that the statute of limitations for the breach of fiduciary duty is the shortest and, therefore, would not result in maximum recovery by the Complainants").

Furthermore, the accrual is governed from the time of injury under § 8.01-230 and cannot be tacked onto the delayed tolling provision for fraud under § 8.01-249(1).

> I disagree with Plaintiffs' contentions that the...breach of fiduciary duty claim alleged in this case [is] akin to fraud, and as a result, the date of accrual is governed by Va. Code § 8.01-249(1). Indeed, the date of accrual provided in Va. Code § 8.01-249(1) is limited to actions for fraud, mistake, and actions for rescission of contract for undue influence where fraud, mistake, or undue influence have been discovered. I find Plaintiffs' argument too tenuous. Had the legislature intended a date of accrual other than that contained in Va. Code § 8.01-230, it could have included it within Va. Code § 8.01-249(1). Thus, Va. Code § 8.01-230 is applicable.

*Schonfeld v. Toll Bros., Inc.*, 51 Va. Cir. 134, 138 (Va. Cir. Ct. 1999).

According to Plaintiff's allegations, he could have suffered no injury later than 2002, when he sold his interests in the corporations and ceased being a shareholder. Under Va. Code § 8.01-230, the limitations period began to run no later than 2002 and expired under Va. Code §

8.01-248 in 2004. The Plaintiff is therefore barred from bringing this claim in 2006.

   *B.*   *Conversion*

Defendants make three arguments in favor of dismissing the conversion cause of action. First, the Defendants argue that the Plaintiff's allegations show there was no possessory right to be converted. Second, Defendants argue that even if there was a possessory right, the intangible property rights at issue here are not subject to conversion. Finally, Defendant Jeanne Reynolds argues that there are no specific allegations tying her to the alleged conversion, and the claim should be dismissed with regards to her. The latter point is the only compelling argument.

In Virginia, the elements of conversion are "(i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." *Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (*citing Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75-76, 92 S.E.2d 359, 365 (1956)). The element of "wrongful exercise of dominion or control" cannot be established where the plaintiff grants permission to the defendant to possess that property. *See Adkins v. Crown Auto, Inc.*, No. 4:04CV00042, 2005 WL 1278948 at *4 (W.D. Va. 2005) (granting summary judgment because there was no wrongful exercise of dominion or control when defendant had lawful possession of a car); RESTATEMENT (SECOND) OF TORTS § 253 (1965) ("One who would otherwise be liable for another for. . . conversion is not liable to the extent that he has acted with the consent of a third person with power to give a consent effective as to the other"). The Defendant here argues that the Plaintiff admits in ¶ 31 of the Complaint that he voluntarily sold his shares to the Defendant, and therefore the Defendant had permission to dispose of the shares. This permission, according

6

to the Defendant, precludes conversion.

The Defendant misstates the Plaintiff's case. While the Plaintiff did voluntarily sell his shares to the Defendant, the Plaintiff's theory of conversion is that the Defendant only obtained the Plaintiff's consent to the sale by committing fraud in the inducement. According to the Complaint, the Defendant induced the Plaintiff to undervalue the shares in the two corporations and sell the shares through fraud, namely, withholding information and cash distributions while holding the Plaintiff liable for taxes. "Consent to possession of a chattel obtained by fraud . . . is not effective to prevent recovery for . . . conversion against any one other than a bona fide purchaser of the chattel." RESTATEMENT (SECOND) OF TORTS § 252A (1965). While I have not found § 252A adopted in civil cases in Virginia, analogous reasoning is applied in Virginia's definition of criminal larceny. *Vaughn v. Commonwealth*, 51 Va. 758, 762 (Va. 1853) ("If by fraud or device the owner (not intending to part with his right), be induced to place his property in the hands of another, who acquires possession with a felonious intent to convert it to his own use, the 'taking' and trespass are such as are required to complete the offence of larceny"). Because the Plaintiff has presented a set of facts which, if proven, could entitle him to relief, the claim can go forward. *Federal Election Commission*, 894 F.Supp. at 950.

The Defendant's second argument is that the Plaintiff has not alleged a tangible property right to which the tort of conversion applies. It is true that conversion only applies to tangible property and that courts have interpreted the property element to include documents such as stock certificates, promissory notes, or bonds or other things that "amount to a clear, definite, undisputed, and obvious property right in a thing to which they are entitled to immediate possession, sufficient to support a claim for conversion." *United Leasing Corp. v. Thrift Ins.*

7

*Corp.*, 247 Va. 299, 305-06, 440 S.E.2d 902, 906 (1994). The Defendant argues that stock ownership does not guarantee the owner a right to cash distributions unless the board of directors authorizes it and that profits from the sale of shares is also not guaranteed. Therefore, the cash distributions of Plaintiff's shares, profits from the sale of his shares, or value of his investment do not "amount to a clear, definite, undisputed, and obvious property right."

The Plaintiff is not arguing that he was entitled to cash distributions merely because he owned shares in the corporations but that the other major shareholder owning an identical class of stock received distributions while the Plaintiff did not. While a shareholder has no right in corporate earnings before the decision to issue a dividend is made, he or she certainly has a right to receive that dividend after the decision is made. *Gordon's Ex'rs v. R., F. & P. R. R. Co.*, 78 Va. 501, 518 (Va. 1884) ("Whether a dividend shall be declared or not, is generally a matter within the discretion of the board of directors. And the common stockholders have no right to it until it is declared. But when this is done, the dividend belongs to the owner of the share at the time."); *Kaufman v. Charlottesville Woolen Mills Co.*, 93 Va. 673, 676, 25 S.E. 1003, 1004 (Va. 1896) ("Corporate earnings are, until distributed by the company, part of the corporate property. The stockholder has an interest in such earnings, as he has in all the other corporate property, in proportion to his stock, but he is not entitled to the control or use of the same, except such portion thereof as the corporation, acting in good faith, may separate from the corporate property, and distribute to the stockholders as dividend or income."). Once the board of directors has made a distribution, all shareholders have a "a clear, definite, undisputed, and obvious property right" to the distributions unless they own a class of shares not entitled to distributions.

8

As for Defendant Jeanne Reynolds, no allegations in the complaint connect her to the tort of conversion. For this reason, the Motion to Dismiss is granted with respect to her.

C. *Tortious Interference with Prospective Contract*

The Defendants present two arguments for dismissing the tortious interference with contract claim. First, The Defendants argue that the statute of limitations on this claim has expired. Defendants also argue that the Plaintiff has failed to allege a legally cognizable business expectancy with which the Defendants could have interfered. Additionally, the Defendants argue that the Plaintiff has failed to allege any specific action by Jeanne Reynolds that could constitute a claim. I grant this motion because the Plaintiff has failed to allege a legally cognizable business expectancy.

There is some confusion about the statute of limitations for cause of action of tortious interference with prospective contract. Virginia courts view contract or business expectancy as property rights, thereby granting the plaintiff a five year statute of limitations on the tortious interference claim. Va. Code Ann. § 8.01-243(B); *Mid-Atlantic Telecom, Inc. v. Long Distance Servs.*, 32 Va. Cir. 75, 78 (Va. Cir. Ct. 1993) ("a five-year period of limitations applies to actions for tortious interference with contractual relations"). The only case cited by the Defendants on this point appears to have applied the wrong time limit. *Douty v. Irwin Mortgage Corp.*, 70 F. Supp. 2d 626 (E.D. Va. 1999) ("The parties agree that, under Virginia law, the statute of limitations governing ...tortious interference with prospective business...is two years."). Perhaps the *Douty* court was misled by the parties' stipulation, but in any event the Virginia courts have consistently applied a five year statute of limitations to tortious interference claims. The Virginia Supreme Court, applying an earlier version of the statute of limitations, triggered the

9

result in *Mid-Atlantic* by reasoning that the right to reap performance from a contract was a property right, and therefore the property statute of limitations should apply. *Worrie v. Boze*, 198 Va. 533, 536, 95 S.E.2d 192, 196 (Va. 1956); *see also Welch v. Kennedy Piggly Wiggly Stores, Inc.*, 63 B.R. 888, 898 (W.D. Va. 1986) (applying the five year statute of limitations). The Plaintiff alleged that his injury occurred in 2002. Therefore, the Plaintiff's claim is timely.

However, the Plaintiff is still required to allege a cognizable business expectancy that was interfered with by the Defendants. Tortious interference with prospective contact has four elements: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Chavez v. Johnson*, 230 Va. 112, 120, 335 S.E.2d 97, 102 (Va. 1985). Proof of the business relationship/contractual expectancy and the intentional interference must meet an objective test, and mere subjective expectations that a business relationship will continue or appear are not enough to make a case for tortious interference. *Commercial Business Systems, Inc. v. Halifax Corporation*, 253 Va. 292, 301, 484 S.E.2d 892, 897 (Va. 1997). Finally, plaintiff must show that there was a probability, not mere possibility, of future economic benefit. *Id.*

The Complaint alleges "[Plaintiff] Williams had a business expectancy to benefit from the sale of PUL and NAL to the venture capital group for $12 million to $14 million." Complaint, ¶65. No other business expectancy is alleged. The Plaintiff sold his shares to Defendant Norman Reynolds in 2002, and the sale of the corporations to the venture capital group did not occur until 2004. In 2002, there could be no objective business expectancy in the

10

future sale to the venture capital group. At best, there was a speculative hope that the shares in the companies might increase in value. A case for tortious interference with prospective contract cannot be built on a "mere possibility" of future economic benefit. *Id.; X-IT Products, LLC v. Walter Kidde Portable Equipment, Inc.*, 155 F. Supp. 2d 577, 653 (E.D. Va. 2001).

## V. CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss claims for Breach of Fiduciary Duty and Tortious Interference with Prospective Contract is **GRANTED**. Defendants' Motion to Dismiss the claim for Conversion is **DENIED** as to Norman Reynolds, but **GRANTED** as to Jeanne Reynolds.

The Clerk is directed to send a certified copy of this Memorandum Opinion and the attached Order to all counsel of record.

ENTERED this 31st day of October, 2006.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE